# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-2310
AND
No. 06-1546

ALFRED R. YOUNG, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided                     May 11, 2009)

*John Cameron*, of Montgomery, Alabama, was on the briefs for the appellant.

*John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Debra L. Bernal*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and MOORMAN and LANCE, *Judges*.

MOORMAN, *Judge,* filed the opinion of the Court. LANCE, *Judge*, filed a concurring opinion.

MOORMAN, *Judge*: The appellant, veteran Alfred R. Young, appeals through counsel an August 17, 2004, decision of the Board of Veterans' Appeals (Board) that, inter alia, denied a disability rating greater than 70% for his service-connected post-traumatic stress disorder (PTSD). On May 9, 2007, the Court issued a single-judge decision in this matter dismissing the appellant's appeal of his claim for entitlement to a rating of total disability based on individual unemployability (TDIU) and affirming the Board's August 17, 2004, decision. On May 29, 2007, pursuant to Rule 35(a) and (b) of the Court's Rules of Practice and Procedure, the appellant filed a motion for reconsideration of the May 9, 2007, decision, or, in the alternative, for a panel decision. *See* U.S. VET.APP. R. 35. Subsequently, the Court withdrew its May 9, 2007, decision.

The August 2004 Board decision on appeal denied a disability rating for PTSD in excess of 70% and remanded the appellant's PTSD claim as it related to the assignment of an effective date; essentially, the Board bifurcated the appellant's PTSD claim. Record (R.) at 15. While the appellant's appeal of the Board's August 2004 decision (Docket No. 04-2310) was pending before the Court, and after the remand ordered in the August 2004 Board decision was completed, the Board issued an April 6, 2006, decision with regard to the effective dates assigned to various disability ratings for the appellant's service-connected PTSD. The appellant appealed the April 6, 2006, Board decision (Docket No. 06-1546). Consequently, the appellant has two appeals pending before the Court stemming from two different Board decisions on the same claim for disability benefits for PTSD.

On August 1, 2008, the Court ordered the consolidation of these appeals, appeal No. 04-2310 (regarding disability rating) and appeal No. 06-1546 (regarding effective date).[1] The consolidated appeals were then called before the en banc Court for decision. Subsequently, on May 11, 2009, the en banc Court returned the matter to a panel of the Court; the panel has reached the following decision.

## I. FACTS

In December 1995, the appellant filed a claim for entitlement to service connection for PTSD, which the Montgomery, Alabama, VA regional office (RO) awarded in September 1996, assigning a 30% disability rating. R. at 24-27, 53. On June 17, 1997, VA received a report from a VA vocational rehabilitation specialist (VRS) stating his "impression that [the appellant's] ability to establish or maintain effective or favorable relationships with people is considerably impaired. His psychoneurotic symptoms cause considerable industrial impairment." R. at 60. On June 30, 1997, VA received a document from the appellant stating that he "need[ed] to re-open [his] service connected claim for an increase in [his] PTSD rating." R. at 62. The appellant also requested information on how to file a claim for entitlement to TDIU. *Id*. VA treated this document as a new claim for an increased disability rating. In December 1997, the RO continued the 30% disability

---

[1]A record has been designated in both the 2004 and 2006 appeals. As the two records are duplicative, all record cites contained in the Court's decision refer to the record in Docket Number 04-2310 unless otherwise noted.

rating for the appellant's PTSD and denied entitlement to a TDIU rating. R. at 91-96. The appellant perfected an appeal to the Board, and in August 1999, the Board denied a disability rating greater than 30% for his PTSD and denied entitlement to a TDIU rating. R. at 114, 193-202. The appellant appealed to the Court, and in October 2000, the Court remanded his claims pursuant to the parties' joint motion for remand. R. at 204-19, 221.

In September 2001, the RO increased the appellant's PTSD disability rating to 50%, effective July 1, 1997. R. at 411. The appellant filed a Notice of Disagreement (NOD) through counsel, stating that he "disagree[d] with . . . [the RO's d]ecision which granted his claim for an increased rating for his service-connected PTSD condition." R. at 414-16. He asserted that the effective date should have been December 7, 1995, and that the rating assigned should have been higher. R. at 414. In March 2003, the RO awarded the appellant a 70% PTSD disability rating, effective August 2001. R. at 539. The appellant perfected another appeal as to the rating and effective date. R. at 563-66. He asserted that he was "entitled to a rating of 100% for his service-connected PTSD with an effective date of December 7, 1995, based on the undisputed medical evidence in the record." R. at 563.

On August 17, 2004, the Board issued the first decision here on appeal denying the appellant's claim for entitlement to a disability rating greater than 70% for his PTSD. R. at 1-18. The Board remanded the effective date portion of the appellant's claim and instructed the RO to issue a Supplemental Statement of the Case (SSOC) addressing whether the appellant was entitled to (1) an effective date prior to June 30, 1997, for his 50% disability rating for PTSD, (2) an effective date prior to August 9, 2001, for his 70% disability rating for PTSD, and (3) an effective date prior to August 9, 2001, for TDIU. R. at 17. The appellant timely appealed the Board's August 2004 decision. After completing the development ordered in the Board's August 2004 remand, on April 6, 2006, the Board issued a decision denying (1) an effective date prior to June 30, 1997, for a 50% disability rating for PTSD, (2) an effective date prior to August 9, 2001, for a 70% disability rating for PTSD, (3) an effective date prior to August 9, 2001, for TDIU, and (4) entitlement to service connection for substance abuse, claimed as secondary to PTSD. R.(06) at 1-44. The appellant timely filed an appeal of the Board's April 2006 decision.

## II. ANALYSIS

### A. Finality of the September 1996 RO Decision

#### 1. Contentions of the Parties

The appellant argues that his December 1995 claim for benefits remains pending because the September 1996 RO decision was not a final decision on his claim. Although this case involves an extended and complicated procedural history, the parties' dispute regarding the finality of the September 1996 RO decision centers on VA's treatment of the two documents received on June 17, 1997, and June 30, 1997, each within the one-year appeal period of the September 1996 RO decision. The appellant asserts that the June 30, 1997, document was an NOD as to the September 1996 RO decision. Appellant's 2004 Brief (App. 04 Br.) at 8-9; Appellant's 2006 Brief (App. 06 Br.) at 9-12. He contends that because VA never issued a Statement of the Case (SOC) in response to his June 30, 1997, NOD, the September 1996 RO decision never became final, and his December 1995 claim for benefits was still pending when the Board issued its August 2004 and April 2006 decisions. App. 04 Br. at 10, 20. He thus contends that because VA erred in construing the June 30, 1997, submission as a new claim for an increased disability rating, VA also erred in failing to assign him an effective date based on the date of his original December 1995 claim for benefits. App. 06 Br. at 13-15. Alternatively, the appellant argues that the June 17, 1997, VRS report was new and material evidence that VA never adjudicated in conjunction with the September 1996 RO decision, in violation of 38 C.F.R. § 3.156(b). Appellant's 2004 Reply Brief (App. 04 Reply Br.) at 1, 5.

The Secretary asserts that the appellant's claim has two claim streams: The first stems from the appellant's December 1995 claim for benefits, which the Secretary argues became final when the appellant failed to appeal the September 1996 RO decision. The Secretary contends that neither of the June 1997 documents that the appellant submitted can be construed as an NOD. Secretary's 2004 Brief (Sec'y 04 Br.) at 11-12. The second claim stream, which the Secretary contends is currently on appeal, stems from the June 30, 1997, document that VA construed as an increased rating claim. The Secretary argues that because the June 30, 1997, document could not be characterized as an NOD–as it neither stated disagreement with, nor asked for any appellate review of, any determination–and because it could not constitute a claim to reopen, it could only be construed as an increased rating claim. Secretary's 2006 Brief (Sec'y 06 Br.) at 19-20. Moreover, the Secretary

asserts that the June 17, 1997, VRS report could not have abated the finality of the September 1996 RO decision because 38 U.S.C. § 7105(c) and 38 C.F.R. § 20.304 specifically prohibit such a tolling. Sec'y 06 Br. at 18. The Court will discuss each document in question, VA's treatment of those documents, the parties' positions on those documents, and their possible impact on the finality of the September 1996 RO decision.

## 2. Applicable Law

Generally, an NOD must be filed within one year from the date of the underlying RO decision, and if no NOD is filed within the one-year appeal period following the RO decision, the decision will become final. *See* 38 U.S.C. §§ 7105(b)(1), (c). However, 38 C.F.R. § 3.156 provides a potential exception to this general rule. Pursuant to § 3.156(b), VA must consider any new and material evidence received during the one-year appeal period following an RO decision "as having been filed in connection with the claim which was pending at the beginning of the appeal period." 38 C.F.R. § 3.156(b) (2008). When VA fails to consider new and material evidence submitted within the one-year appeal period pursuant to § 3.156(b), and that evidence establishes entitlement to the benefit sought, the underlying RO decision does not become final. *See Muehl v. West*, 13 Vet.App. 159, 161-62 (1999).

The Court reviews de novo whether a certain document constitutes an NOD. *See* 38 U.S.C. § 7261(a)(1); *Palmer v. Nicholson*, 21 Vet.App. 434, 436 (2007). VA defines an NOD as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result." 38 C.F.R. § 20.201 (2008). It must be expressed "in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review" and "the specific determinations with which the claimant disagrees must be identified." *Id.*

The effective date of any award "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a). However, in a claim for increased compensation, the effective date may date back as much as one year prior to the date of the formal application for increase if it is "factually ascertainable that an increase in disability had occurred" within that period. *See* 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2) (2008).

5

Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). In addition, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, *supra*.

### 3. Application of Law to Fact

#### a. The June 30, 1997, Document

Because it is uncontested that the September 1996 RO decision was not yet final when VA received the June 30, 1997, document, there is also no dispute that the June 30, 1997, document could not constitute a claim to reopen any previously denied claim. *See Jennings v. Mansfield*, 509 F.3d 1362, 1367-68 (Fed. Cir. 2007) ("[A] claim becomes final and subject to a motion to reopen only after the period for appeal has run."); 38 C.F.R. § 3.160(e) (2008) (a claim to reopen is any claim for benefits received "after final disallowance of an earlier claim"); *see also Muehl*, *supra* (holding that the Board erred in determining that evidence submitted during the appeal period was a claim to reopen a previously disallowed claim). In its April 2006 decision, the Board found that the June 30, 1997, document that the appellant submitted did not contain the requisite information for it to be considered an NOD. R. (06) at 29. The Board thus concluded that because the appellant did not file an NOD, the September 1996 RO decision was final. R. (06) at 30.

Upon de novo review, the Court holds that the June 30, 1997, document does not constitute an NOD. *See* 38 U.S.C. § 7261(a)(1); *Palmer*, *supra*; 38 C.F.R. § 20.201. The document cannot reasonably be construed to express disagreement with a particular decision or reflect an intent to seek appellate review. Regarding his PTSD claim, the document states only the appellant's request to "re-

6

open [his] service connected claim for an increase in [his] PTSD rating" and notes that his "counselor has determined that a vocational rehabilitation program is not feasible." R. at 62. The document does not mention the September 1996 RO decision, it does not express disagreement with the rating assigned therein, nor does the document request any review of the appellant's PTSD disability rating. *See* 38 C.F.R. § 20.201.

### b. The VRS Report

The appellant argues that his submission of the VRS report in June 1997, within the one-year appeal period after the September 1996 RO decision, "tolled the appeal period for the September 1996 decision." App. 04 Reply Br. at 1. He contends that in June 1997, at the time he submitted the VRS report, his December 1995 claim for benefits was a pending claim that had not been finally adjudicated, and thus, the Board erred in "ignor[ing]" the application of 38 C.F.R. § 3.156(b), which he asserts "created an exception to the finality of a VA rating decision where there is submitted by the veteran . . . new evidence within the one-year appeal period after the rating decision is issued." App. 04 Reply Br. at 5.

In its April 2006 decision, the Board noted that the appellant "contested the finality of" the September 1996 RO decision, and it considered his argument that the VRS report "had the effect of preventing the finality of the June 1996 RO decision." R. (06) at 29. However, the Board found that "38 C.F.R. § 20.304 provides that the filing of additional evidence after receipt of notice of an adverse determination does not extend the time limit for initiating an appeal from that determination." *Id.*; *see* 38 C.F.R. § 20.340 (2008) (with certain exceptions, "the filing of additional evidence after receipt of notice of an adverse determination does not extend the time limit for initiating or completing an appeal from that determination"). The Board thus concluded that the September 1996 RO decision was final. R. (06) at 30. In so concluding, the Board did not consider and discuss 38 C.F.R. § 3.156(b). At the time VA received the VRS report, 38 C.F.R. § 3.156(b) provided:

> (b) New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board of Veterans Appeals without consideration in that decision in accordance with the provisions of § 20.1304(b)(1) of this chapter), will be

considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

38 C.F.R. § 3.156 (b) (1997); *see* 66 Fed. Reg. 45,620 (Aug. 29, 2001) (amendments to § 3.156 apply to any claim for benefits received by VA on or after August 29, 2001). The record before the Board revealed that the appellant filed evidence, in the form of the VRS report, prior to the expiration of the one-year appeal period following the September 1996 RO decision. The Board's failure to discuss § 3.156(b), which, on this record, is a potentially applicable regulatory provision, requires remand. *See Weaver* and *Schafrath*, both *supra*.

Upon receipt of the VRS report, VA was required to evaluate it to determine whether it met the definition of "new and material evidence" set forth in 38 C.F.R. § 3.156. *See* 38 C.F.R. § 3.156(a) (1997). If VA found the VRS report to be new and material evidence, VA should have considered it as having been filed in connection with the appellant's December 1995 claim. *See Jennings*, 509 F.3d at 1368 ("Any interim submissions before finality must be considered by . . . VA as part of the original claim."); *Muehl*, 13 Vet.App. at 162 (evidence received during the one-year appeal period following an RO decision "should have been considered in conjunction with the original claim"). If, on the other hand, the appellant's submission was properly construed as a claim for an increased disability rating, he was entitled to have VA adjudicate whether it was "factually ascertainable that an increase in [his] disability had occurred" in the one-year period prior to VA's receipt of his claim. 38 C.F.R. § 3.400(o)(2). This the Board also failed to do. Although the Board noted that the law provided for an effective date for the award of an increased disability rating "within the one-year period preceding the date of receipt of a claim for increased compensation," the Board did not specifically determine whether the appellant's PTSD increased in severity in the one-year period prior to his submission of the VRE report. R. (06) at 12. The Board's April 2006 decision thus is inadequate to facilitate the Court's review. *See Allday*, *supra*.

Contrary to the Board's finding and the Secretary's assertion, § 20.304 cannot excuse a VA failure to follow its own procedures. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Rather, the Court's and the U.S. Court of Appeals for the Federal Circuit's jurisprudence make clear that VA's failure to follow its own procedures may result in a lack of finality of the underlying RO

or Board decision at issue. *See AG v. Peake*, 536 F.3d 1306, 1308 (Fed. Cir. 2008) (holding, as a result of VA's failure to notify the appellant of his right to appeal, the underlying RO decision "never became final"); *Ingram v. Nicholson*, 21 Vet.App. 232, 241 (2007) ("[T]ime limitations pertaining to a veteran's right to appeal an adverse decision do not begin to run until the veteran has received proper notice that his claim was denied."); *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994) (per curiam order); *see also Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) (en banc) (VA's failure to issue an SOC after receipt of an NOD prevents the underlying RO decision from becoming final because such a failure "ha[s] the effect of extinguishing the claimant's right to appeal an adverse decision"); *Palmer*, 21 Vet.App. at 438 ("The filing of the NOD entitled [the appellant] to receive an SOC. . . . Because the RO failed to provide [the appellant] with an SOC, he was unable to file a formal appeal to the Board, and the [underlying] RO decision never became final."); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992) (VA's mailing an SOC to the veteran in the care of his representative "is not sufficient to meet the requirements imposed upon the Secretary by his own regulations," and VA "cannot close a case for lack of response to a[n SOC] unless the appellant . . . received the [SOC]").

Section 3.156(b) is intended to be a veteran-friendly provision that allows for the assignment of an effective date of the date of the original claim when certain requirements are met. 72 Fed. Reg. 28,778 (May 22, 2007) (explaining that §§ 3.156(b) and 3.400 "provide a claimant-friendly effective date rule for awards based on evidence received while a claim is on appeal or before the appeal period expires"). To accept the Secretary's position that the Board correctly determined that the September 1996 RO decision was final would be to allow VA to ignore this claimant-friendly provision. It would also create the possibility that VA, by not considering evidence submitted during the one-year appeal period following the RO decision and simply waiting for the RO decision to become final, deprived the appellant of the earlier effective date associated with his December 1995 claim. This would be antithetical to the nonadversarial, claimant-friendly nature of VA proceedings. *See Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007) (noting "VA's uniquely pro-claimant benefits system"); *Vazquez-Flores v. Peake*, 22 Vet.App. 37, 44 (2008) ("To ensure that claimants receive the benefits to which they are entitled, Congress created a uniquely pro-claimant, nonadversarial VA-benefits adjudicatory system that contains several important procedural steps to

9

promote that pro-claimant environment."); *see also Voracek v. Nicholson*, 421 F.3d 1299, 1305 (Fed. Cir. 2005) (Michel, C.J., concurring) (VA "is obligated to read a veteran's claim in the light most favorable to the veteran"). The Court thus holds that remand is necessary for the Board to apply § 3.156(b) and make a threshold determination whether the VRS report was new and material evidence of the severity of the appellant's PTSD. *See Muehl*, 13 Vet.App. at 161 (holding that where VA received evidence within the one-year appeal period following an RO decision, the Board erred in determining that the evidence constituted a claim to reopen without first discussing the application of § 3.156(b)). If the Board determines that the VRS report was new and material evidence when VA received it, VA must consider the VRS report as having been filed in connection with the appellant's December 1995 claim and readjudicate his claim considering the VRS report. *See Jennings*, *supra*; *Muehl*,13 Vet.App. at 162. If the Board determines that the VRS report was not new and material evidence, the Board then must determine whether the VRS report is appropriately considered a claim for an increased disability rating and so adjudicate it, including making a determination whether the appellant's PTSD increased in severity in the one-year period prior to his filing his claim for an increase. *See* 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2) (2008). The Board must provide an adequate statement of the reasons or bases for its determinations. *See Caluza*, *Allday*, and *Gilbert*, all *supra*.

## B. PTSD Disability Rating and Effective Date

Effective November 7, 1996, VA revised its regulatory criteria for evaluating psychiatric disorders, including PTSD. *See* 61 Fed. Reg. 52,695 (Oct. 8, 1996) (final rule amending VA's schedule for evaluating disabilities pertaining to mental disorders). The appellant asserts that he is entitled to a 100% disability rating, effective December 1995. He reiterates his argument that his December 1995 claim for benefits remained pending, and thus, he argues that the Board should have considered the application of the pre-1996 version of the applicable diagnostic codes (DCs) for rating PTSD. App. 04 Br. at 11-12; App. 06 Br. at 15-27.

### 1. August 2004 Board Decision

The August 2004 Board decision assessed the appellant's level of disability from August 2001 forward and found "no basis for assignment of a schedular evaluation greater than 70[%] for PTSD." R. at 14. The appellant's level of disability prior to August 2001 is discussed in the next

section below. Because the Board found that the appellant's claim stemmed from his June 30, 1997, claim for an increased rating, it applied to the appellant's claim the amended version of the applicable regulatory criteria and DCs. R. at 6, 11; *see* 38 C.F.R. § 4.130, DCs 9411, 9440 (2003). Because the Court is remanding the issue of the appropriate treatment of the VRS report, which may lead VA to consider the level of the appellant's disability prior to the regulatory amendments, the Court will also remand the issue of the proper disability rating for the appellant's PTSD. The Court need not now address the appellant's argument that the Board erred in "implicitly denying" his claim for an extraschedular disability rating. App. 04 Br. at 21-25; *see Best v. Principi*, 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). To the extent that the Board was not on notice at the time it issued its August 2004 decision, the Board is now on notice that the appellant has asserted, in addition to his entitlement to an increased schedular disability rating, that a schedular evaluation may be inadequate to compensate him for his PTSD; and, the Board must address the matter on remand. *See Colayong v. West*, 12 Vet.App. 524, 536-37 (1999) ("[W]here the veteran has asserted that a schedular rating is inadequate, the Board must specifically adjudicate the issue of whether an extraschedular-rating analysis is appropriate and, if there is enough such evidence, the Board must direct that the matter be referred . . . for consideration.")

## 2. April 2006 Board Decision

The April 2006 Board decision addressed the appellant's level of disability prior to August 2001 and determined that the appellant was not entitled to either a 50% disability rating prior to June 1997 or a 70% disability rating prior to August 2001. R. (06) at 17-44. The Secretary asserts that in reaching its determinations, the Board did not adequately explain its rejection of medical evidence that tended to show that the appellant was unemployable beginning in August 1995. Sec'y 06 Br. at 13-16. The Secretary thus concedes that remand of the issue of the appellant's PTSD disability rating is required to allow the Board to provide a sufficient statement of the reasons or bases for its decision. Upon review, the Court holds that remand is necessary for the Board to analyze the credibility and probative value of the evidence regarding the appellant's level of disability and to

provide adequate reasons or bases for its rejection of any material evidence favorable to the claimant. *See Caluza* and *Gilbert*, both *supra*.

## C. TDIU

The appellant argues that he is entitled to a December 1995 effective date for his grant of TDIU based on the medical evidence of record and that the Board erred in failing to so find. App. 06 Br. at 15-27. Because the Court is remanding the issues of the appropriate treatment of the VRS report and the appropriate disability rating for the appellant's PTSD prior to August 9, 2001, and because the Secretary concedes that the Board failed to provide a sufficient statement of its reasons or bases for its findings regarding the appellant's level of disability during this period, the Court will also remand the appellant's claim that he is entitled to a grant of TDIU prior to August 9, 2001. *See Gurley v. Nicholson*, 20 Vet.App. 573, 575-76 (2007) ("[A]ny decision by the Court on TDIU entitlement could be rendered meaningless by an adjudication below that awards a higher schedular rating that, in turn, may satisfy the requirements for an award of schedular TDIU under 38 C.F.R. § 4.16(a).").

## D. Substance Abuse

In its August 2004 decision, the Board remanded the appellant's claim for service connection for substance abuse as secondary to his service-connected PTSD for VA to provide a medical examination that assessed the etiology of the claimed substance abuse. R. at 17. VA provided the appellant that examination in November 2004. The appellant now asserts that VA failed to provide him a copy of that examination report until after the Board issued its April 2006 decision on his claim; and, this failure denied him a meaningful opportunity to participate in the adjudication of his claim. App. 06 Br. at 27-28. The Secretary contends that the appellant, despite having been represented by the same counsel for the entirety of the proceedings before the Board, neither made this argument to the Board nor specifically requested the November 2004 VA examination report. Sec'y 06 Br. at 11-12.

On February 10, 2005, the appellant's counsel sent VA a letter specifically requesting "a complete copy of all medical records, [compensation and pension] examination reports and other developments (and all engagement letters) added to [the appellant's] claims file after the Board's August 17, 2004, Remand order." Supplemental (Suppl.) R. (06) at 28. On November 23, 2005, the

12

appellant's counsel notified VA that he had requested such documents on February 10, 2005, and as of the date of the letter he "ha[d] not received any of the requested documents." Suppl. R. (06) at 44. The appellant's counsel thus again requested that VA provide him a copy of the above-requested documents. *Id*. On January 12, 2006, the appellant's counsel sent VA a letter stating:

> On February 10, 2005[,] and on November 23, 2005, we requested from your office a complete copy of Mr. Young's medical records, [compensation and pension] examination reports and other developments which were added to the veteran's claims file after the Board's August 17, 2004, Remand Order.
>
> . . . .
>
> As of this date, we have not received a copy of [the requested documents].
>
> . . . .
>
> Would you please . . . mail me a complete copy of Mr. Young's medical records, [compensation and pension] examination reports, and other developments which were added to the veteran's claims file after the Board's August 17, 2004, Remand Order within fifteen (15) days.

Suppl. R. (06) at 48. In April 2006, when the Board issued its decision on the appellant's claim for service connection for substance abuse, the appellant had not received the requested documents.

By failing to furnish the appellant a copy of the 2004 medical examination report before the Board considered and relied on it in the April 2006 decision, and after the appellant's multiple requests for a copy of the report, VA violated the fair process principle underlying *Thurber v. Brown*, 5 Vet.App. 119 (1993). *See id*. at 123 ("The entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process."); *see also Newday v. Peake*, 22 Vet.App. 262, 264-65 (2008) ("Before relying on any additional evidence developed [on remand], the Board should ensure that [the a]ppellant is given notice thereof and an opportunity to respond thereto."); *Thurber*, 6 Vet.App. at 126 ("[B]efore the [Board] relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the [Board] must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it."). The Court thus holds that remand is necessary for VA to provide the appellant an opportunity to respond to the information contained in the 2004 VA medical examination report and, after the

appellant has been given a "reasonably opportunity" for response, to readjudicate his claim for service connection for substance abuse. *See Thurber*, *supra*.

## III. CONCLUSION

Based on the foregoing analysis and a review of the record on appeal, the matters of (1) the proper treatment of the VRS report; (2) the appellant's entitlement to a disability rating greater than 50% prior to July 1, 1997; (3) the appellant's entitlement to a disability rating greater than 70% prior to August 9, 2001; (4) the appellant's entitlement to an award of TDIU prior to August 9, 2001; (5) the appellant's entitlement to an extraschedular disability rating; and (6) the appellant's entitlement to service connection for substance abuse secondary to PTSD are REMANDED for further proceedings consistent with this decision. Those portions of the Board's August 17, 2004, and April 6, 2006, decisions addressing the foregoing issues are VACATED. On remand, the appellant may submit additional evidence and arguments to the Board, and the Board is required to consider them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). In addition, the Board shall proceed expeditiously. *See* 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court). The remainder of the Board's August 2004 and April 2006 decisions are AFFIRMED.

LANCE, J., *concurring:* I fully concur with the ultimate outcome reached by the majority. I write separately to note my disagreement with the conclusion that VA's failure to consider new and material evidence in conjunction with the original claim vitiates the finality of the decision regarding that original claim. *See ante* at 5 ("When VA fails to consider new and material evidence submitted within the one-year appeal period pursuant to § 3.156(b), and that evidence establishes entitlement to the benefit sought, the underlying RO decision does not become final."). *Muehl v. West* held that Social Security Administration records received within a year of an RO decision "should have been considered in conjunction with the original claim" pursuant to § 3.156(b) and that because the records were not so considered, "there was no final decision on the [original claim]." 13 Vet.App. 159, 161-62 (1999). *Muehl*, however, was decided under the framework of *Hayre v. West* that held procedural error vitiated finality. 188 F.3d 1327 (Fed. Cir. 1999) (denial of benefits not final for

14

purposes of appeal if there was breach of the duty to assist), *overruled in part by Cook v. Principi,* 318 F.3d 1334 (Fed. Cir. 2002) (en banc) (grave procedural error is not an exception to the rule of finality). In *Cook*, the Federal Circuit altered this framework by overruling *Hayre* and holding that grave procedural error did not abrogate the finality of a decision. *Id.* at 1341. To this extent, I believe *Cook* overruled the portion of *Muehl* that held that failure to consider evidence pursuant to § 3.156(b) resulted in "no final decision on the [original claim]." *Muehl*, 13 Vet.App. at 162.

The section at issue in this case, § 3.156(b), is a procedural regulation that guides VA's consideration of new and material evidence received by VA within the time to appeal a decision in much the same way that the duty to assist is a procedural statute governing how evidence will be obtained in a claimant's case. In *Cook*, the Federal Circuit considered that this Court has "held that the time for appealing either an RO or a Board decision did not run where VA failed to provide the veteran with information or material critical to the appellate process." 318 F.3d at 1340 (citing *Tablazon v. Brown*, 8 Vet.App. 359 (1995)); *Hauck v. Brown*, 6 Vet.App. 518 (1994); *Kuo v. Derwinski*, 2 Vet.App. 662 (1992); *Ashley v. Derwinski*, 2 Vet.App. 307 (1992). The opinion in *Cook* stated, however, that in these cases, i.e., *Tablazon, Hauck, Kuo,* and *Ashley*, all *supra*, "VA's failure to comply with statutory procedural requirements regarding notification of benefit determinations had the effect of extinguishing the claimant's right to appeal an adverse decision." *Cook*, 318 F.3d at 1341. Distinguishing *Hayre*, the court determined that regardless of any failure of the duty to assist in the development of evidence, Mr. Hayre was afforded notice of the RO decision and had he filed an NOD, VA would have issued an SOC. "Thus, the VA's failure to notify Hayre that it had been unsuccessful in obtaining his SMRs [service medical records] did not preclude him from challenging the administrative decision denying his claim and raising the issue of the duty to assist after he was notified of the basis of the decision." *Id.* In this case, Mr. Young was notified of his appellate rights and had opportunity to file an NOD with the original September 1996 decision. He did not do so and statute mandates that "[i]f no [N]otice of [D]isagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final." 38 U.S.C. § 7105(c). Mr. Young also had the opportunity to challenge the RO's December 1997 decision that considered his new and material evidence–which he did, hence our decision today. Like *Hayre*, Mr. Young had opportunity to challenge the VA's initial failure to consider his

evidence received in conjunction with his original claim. Accordingly, VA's failure to consider and apply § 3.156(b) does not create an exception to finality in the same way that other grave procedural errors, so long as they are not of the type that have the effect of extinguishing a claimant's right to appeal an adverse decision, do not vitiate finality. *Cook*, 318 F.3d at 1341.

Nevertheless, I reach the same result as the majority because, in my view, § 3.156(b) operates to relate back to the original claim any subsequent decision that considers new and material evidence received by VA during the time to appeal the original determination. This achieves the objectives of § 3.156(b) without treading on *Cook'*s holding and creating an exception to the rule of finality reminiscent of *Hayre*. *Cook*, 318 F.3d at 1339 ("[W]e see nothing . . . that indicates that Congress intended to allow additional exceptions to the finality of VA decisions based upon 'grave procedural error.'"). The relation-back operation of § 3.156(b) is also fully consistent with § 20.304, which states that "the filing of additional evidence after the receipt of notice of an adverse determination does not extend the time limit for initiating or completing an appeal from that determination."

A.  General Operation of § 3.156(b)

Section 3.156(b)  anticipates the situation where new and material evidence is received by VA *at a time* when the claim is not yet final–within a year after an RO decision on the claim. In this instance, § 3.156(b) operates so that VA may consider this evidence and issue a new RO decision that *relates back* to the original claim for purposes of preserving the initially assigned effective date and the application of the extant rating provisions. This serves the claimant, for example, who was awarded service connection in an RO decision, but is dissatisfied with the disability rating assigned. Without having to process a lengthy appeal to the Board,[2] which requires filing an NOD, waiting for the processing of an SOC, and filing a Substantive Appeal, the claimant can simply present his new and material evidence to VA and have it considered and adjudicated in a subsequent RO decision, preserving the effective date assigned in the original decision. This also operates to avoid harm to the less savvy claimant who would like new and material evidence be considered, but does not

---

[2]Currently, an appeal to the Board takes an average of three years to produce a decision. JAMES P. TERRY, REPORT OF THE CHAIRMAN OF THE BOARD OF VETERANS' APPEALS FOR FISCAL YEAR 2008 19 (2009), *available at* http://www.va.gov/Vetapp/ChairRpt/BVA2008AR.pdf.

understand that filing an NOD is necessary to prevent the original RO decision from becoming final and losing out on any effective date assigned.

## B. Application of § 3.156(b) Where Original Claim is Granted: New Evidence Construed as a Separate Increased Rating Claim

Applicability of § 3.156(b) is not limited to claims that are denied by the RO but also where, as here, a rating decision grants service connection. Unlike a claim that is denied, where a claim is granted, new and material evidence received within the appeal period may be construed by VA as a claim for an increased rating, as it was in Mr. Young's case. Whatever administrative label is given to the evidence, if it is new and material and is received within the appeal period, the decision regarding that evidence must relate back to the original claim. Where an NOD is filed in addition to new and material evidence, construing that evidence as part of a separate increased rating claim is procedurally beneficial because that posture prevents the Board from necessarily being deprived of appellate jurisdiction over the original claim. This is so because, if the new and material evidence is not considered part of the original claim being appealed, that appeal would not be subject to a remand so that the evidence might first be considered by the agency of original jurisdiction. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) (Board's review of evidence not considered by the agency of original jurisdiction in the absence of a waiver from the appellant violates 38 U.S.C. § 7104(a)). Therefore, receipt of new and material evidence would not result in a deprivation of the Board's jurisdiction to consider the original appeal; but § 3.156(b) allows any decision on that evidence to relate back to the original claim even if considered in the context of a separate increased rating claim. Pursuant to § 3.156(b), any RO decision as to the increased rating claim is fully appealable but must relate back to the original decision, while the Board may proceed with the appeal of the original RO decision. In this case, the appellant does not lose the benefit of his originally assigned effective date as he would if evidence as to disability rating was received after the appellate period. Further, the Board is not stripped of jurisdiction over the original claim. This serves an efficient purpose: the claimant is able to challenge, e.g., a disability rating immediately through the submission of new and material evidence if it exists, but the process of Board review of the initially assigned effective date, for example, may continue without interruption and delay. This promotes the efficiency of decisions and serves the

17

interests of claimants as well as VA. This is particularly useful where an NOD is filed quickly but new evidence is not submitted until near the end of the one-year appeal period.

To summarize, by allowing VA to treat new evidence as a new and separate claim that relates back to the filing of the original claim, § 3.156(b) solves two potential problems. First, without § 3.156(b), the unsophisticated veteran would lose a possible earlier effective date by not submitting an NOD with new evidence –precisely the situation in this case–while the sophisticated veteran (or his representative) would *always* submit an NOD with new evidence to preserve his effective date even if he did not think there was any error based on the original record. Section 3.156(b) avoids this game and unnecessary appeals by preserving the potential effective date of the original claim if new evidence is submitted within one year *if* it is material.

Second, by allowing new evidence to be treated as a separate claim, § 3.156(b) avoids the need to continually delay appellate review in order to protect the claimant's effective date if the appellant is submitting a constant stream of new evidence. This scenario is particularly likely where the issue is disability rating and the appellant is receiving regular treatment for a condition the severity of which is in flux. In that case, the Board can bring some finality to the original decision while leaving the door open for a retroactive award based upon evidence submitted within the one-year appeal period. Of course, the new evidence can always be considered as part of the original claim rather than as a separate claim if the RO can process it prior to the appeal of the original claim being certified to the Board, but this is not that case. Ultimately, § 3.156(b) gives the Secretary the ability to be veteran friendly while maintaining administrative flexibility to process both appeals and new evidence efficiently. Therefore, VA is free to either process new evidence as part of a pending appeal or treat it as a separate claim as appropriate. If the new evidence is material and compensation is awarded, then that award may have an effective date back to the date of the original claim regardless of the procedure chosen.

In conclusion, I would hold that Mr. Young's original 1995 claim was finally decided by the RO in September 1996 because that determination was not appealed. If, on remand, the Board determines that the evidence received by VA in June 1997 was new and material, then a new decision considering that evidence in light of the rating provisions that were in effect at the time of the original claim will relate back to the date of the original December 1995 claim.

18